(47 App. Div. 4.)

## DAY v. CARMICHAEL.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

1. FIRM CONTRACT—ACTION AGAINST PARTNER—WAIVER OF OBJECTION.
   Objection that one is sued alone on a contract of the firm of which he is a member, not being taken by demurrer or answer, is waived.
2. APPEAL—WEIGHT OF EVIDENCE.
   A verdict will not be held against the weight of evidence, it depending on which of the parties shall be believed, and there being evidence which, if believed, will sustain it.

Appeal from trial term, New York county.

Action by George Day against Thomas Carmichael. From a judgment on a verdict for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

James Dunne, for appellant.

Edmund Luis Mooney, for respondent.

INGRAHAM, J. There were two questions in this case, both of which were submitted to the jury. The sole ground upon which the defendant asks us to reverse the judgment is that the finding of the jury was against the weight of evidence. The first question is as to whether the defendant, when making the contract with the plaintiff, acted individually or as a member or representative of the firm of Dent, Palmer & Co.; and the second is as to the value of the plaintiff's services. It seems that the defendant was a member of the said firm, and is its sole representative in this country; that the plaintiff had knowledge of the fact that the defendant did represent such firm, although it does not appear that he was aware of the defendant's exact relation thereto. That he was employed by the defendant is conceded. From the ·plaintiff's testimony it appears that he was introduced to the defendant by a Mr. McLanahan as a person who might be able to help him at Hempstead; "if not to save the waterworks he may be able to sell to the Hempstead people the old plant." The defendant then explained the situation to the plaintiff. He (the defendant) said that he was interested in certain waterworks in the town of Hempstead; that the town, at an election, had adopted a proposition to build public waterworks upon an issue of bonds, and that the contract for the new waterworks had been made. The defendant stated that they had sold the bonds, or a great many of them, to widows and orphans, "and he felt so bad about it that he had been paying the interest out of his own pocket on those bonds, and the people who owned the bonds did not know this, and did not know but what they were as good as when they bought them; and he felt very badly about it, because he had advised the sale of these bonds, and they knew nothing about it on the other side except what he told them; and he felt that it was on himself, and that he did not know how he·was to break it to the people that the thing was no good any more. He said: 'We will have to put our hands in our pockets, and buy the bonds back at the price we

sold them for; will have to buy them all back.' And he said: 'How will you do it?' I said: 'I don't know how. I will have to go over the ground, and find out how to do it.'" In consequence of this interview, the plaintiff testified that he spent considerable time and money in investigating the matter at Hempstead, and finally discovered that there was a mistake made in the notice for the election; that the election was illegal, and that a new election would have to be ordered. After this discovery was made, the plaintiff went back to the defendant, and told him that he had found some means which he thought could save him, or would give him "a big show to get his waterworks back," and the plaintiff then said to the defendant: "Now, this is a case where I will have to go to work, and employ special help." The defendant replied: "What will it cost?" "I said, 'It will cost you from $5,000 to $10,000. I will make it just as low as I can.'" The defendant said: "If you get the works back, I am willing." The defendant's evidence as to his relations to the plaintiff is somewhat different. He alleges that the plaintiff was first employed on the defendant's return from Europe, about the end of September, 1895. The defendant testifies: "On my return from Europe, about the end of September, 1895, Mr. Day called on me, and stated that he had found there was a flaw in the election; that the advertised notice of election was too short, and it was required to have a fresh election to make the bonds legal. He then offered his services. He said he had in his office a Mr. Driscoll, who understood such work very well; that he (Mr. Day) had a large acquaintance at Hempstead, and he thought, if we were prepared to offer better service to the village than they had previously had, that we might get them to reconsider their decision. Mr. McLanahan advised me to retain Mr. Day. I retained Mr. Day, without making any bargain whatsoever." It does not appear that there was any statement made to the plaintiff that such retainer was on behalf of Dent, Palmer & Co., or other than an individual retainer of the defendant. It does not appear that the plaintiff was informed that the defendant was a member of the firm of Dent, Palmer & Co., or was acting as its representative, or in its interest. The defendant spoke in the first person, and, whether the retainer was in June or in September, so far as the question of the individual responsible for the services rendered by the plaintiff, this evidence, standing alone, would indicate that it was a personal contract with the defendant, rather than a contract of the firm that he represented. The court, in submitting the case to the jury, instructed them that, if the defendant made this contract as an individual, he would be liable upon it, although his firm might reap some of the benefit for the services that he rendered; but the court subsequently, at the request of the defendant, said that, "if the jury believe that at the time of the making of the alleged contract the defendant was a member of the firm of Dent, Palmer & Co., and in respect of such contract the defendant acted for and on behalf of his firm, and not in an individual capacity, their verdict must be for the defendant." These instructions were certainly as favorable to the defendant as was justified, and the jury, by their verdict, having found that the employment was by the defendant individually, and

such verdict being sustained by the evidence, their verdict is conclusive. In this connection it is well to call attention to the fact that there was no allegation in the answer that there was a defect of parties defendant, in that other members of the firm of Dent, Palmer & Co. are not parties to the action. The answer alleges that the contract was made by the firm, and not by the defendant; but, as the defendant was a member of the firm, he was liable for the plaintiff's services, if the contract was made by the firm; and, if the defendant had desired to take advantage of the fact that the defendant partners were not joined as parties defendant, he was required to take such an objection by demurrer, if the objection appeared upon the face of the complaint, or, if not, by answer; and, such an objection not having been taken either by demurrer or answer, the defendant is deemed to have waived it. Code Civ. Proc. §§ 498, 499. This question, however, seems to have been submitted to the jury by the court without objection, and their determination of the question obviates the objection.

The other point relied on by the defendant is, in substance, that the amount allowed by the jury to the plaintiff is excessive. There was a conflict between the evidence of the plaintiff and that of the defendant as to the services rendered by the plaintiff; the plaintiff testifying that he was engaged in this business from June until the latter part of October, while the defendant testified that the first employment of the plaintiff was at the end of September, and that the services that he rendered personally were unimportant. In view of this conflict, and considering the evidence of the understanding between the parties as to the amount to be paid for the work if successful, it would seem that the question of the value of the plaintiff's services was for the jury, and that, in view of this testimony, the verdict, which awarded as the total costs of the services rendered by the plaintiff and his associates the sum of $5,000, was not excessive, so as to justify the interference of the court upon appeal. It would appear from this evidence, if believed, that it was agreed that the compensation which was to be paid was to be to a large extent contingent upon success; that the defendant was expressly informed that the cost would be at least $5,000 if the plaintiff accepted the employment, and to that the defendant agreed if the waterworks were saved; and it cannot be said that a verdict which enforced this agreement was against the weight of evidence. The jury had the power to believe the plaintiff as against the defendant, and upon the whole case I think the verdict was fairly sustained by the evidence.

There are no exceptions to the charge or to rulings upon the evidence relied on by the defendant, and the judgment should be affirmed, with costs. All concur.